In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1041

BISHOP HARVEY, JR., et al.,

*Plaintiffs-Appellants*,

*v.*

TOWN OF MERRILLVILLE, an Indiana
municipal corporation, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 07 CV 98—**Joseph S. Van Bokkelen**, *Judge*.

ARGUED MAY 13, 2011—DECIDED JULY 11, 2011

Before CUDAHY, KANNE, and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. Henry David Thoreau found solace when he lived near Walden Pond. Homeowners perhaps seeking the same from a small pond in the Innsbrook subdivision in Merrillville, Indiana, claim to have found anything but. They allege that the retention pond their lots abut is a haven not for tranquility but for algae and mosquitoes, a source of flooding and frustra-

tion rather than inspiration and insight. They feared that a proposed expansion of the subdivision would only exacerbate their problems with the pond, and they attempted to voice their concerns with Merrillville town officials during and after the subdivision approval process. The disgruntled homeowners, most of whom are African American, claim that Merrillville refused to listen to them, with a town council member (also African American) allegedly turning his back to them on one occasion and slinging a racial epithet at them on another. They also contend that Merrillville violated their Fourteenth Amendment equal protection rights by being more responsive to similar complaints lodged by white residents of another subdivision years later.

Twenty-one of the aggrieved Innsbrook residents obtained counsel and sought redress for the alleged equal protection violations against the Town of Merrillville ("Town"), sixteen individuals who worked for the Town in various capacities (collectively the "Town Defendants"), and the Town's acting engineer ("Warmelink") by filing suit pursuant to 42 U.S.C. § 1983 in the Northern District of Indiana. The Innsbrook residents also raised several state law claims against these and a collection of other defendants, a total of thirty-one in all. The Town and Town Defendants responded to the residents' sprawling scattergun complaint by filing a counterclaim seeking a declaration that the Town was not obligated to maintain the retention pond.

About three years and over 400 docket entries into the case, the residents moved for summary judgment on

twelve issues, among which was whether "the Town of Merrillville and the Town Defendants deprived [them] of equal protection of the law." The Town and Town Defendants responded in kind, moving for summary judgment on all the residents' claims as well as their counterclaim. Among other things, they argued that they were entitled to summary judgment on the § 1983 claim because "plaintiffs cannot establish that there exist similarly situated communities to serve as comparators." R.434 at 59. Defendant Warmelink separately moved for summary judgment on the residents' claims against him.

In an order dated December 2, 2010, the district court granted summary judgment in favor of the Town and the Town Defendants, finding that the residents' § 1983 equal protection claim could not succeed because they failed to identify a similarly situated class that the Town and Town Defendants treated more favorably. Believing this order fully disposed of the residents' sole federal claim, the district court declined to exercise supplemental jurisdiction over the state law claims and ordered the case "remanded to state court." But the next day, Warmelink, who was not mentioned in the December 2 order, filed a motion seeking clarification as to the status of his summary judgment motion. The district court issued an order ("the December 3 order") in which it invoked Fed. R. Civ. P. 60(a) and purported to enter, "[f]or the same reasons stated in its December 2, 2010, Opinion and Order . . . summary judgment in favor of Defendant John E. Warmelink on Plaintiffs' § 1983 claim against him, because Plaintiffs are unable to

establish that any constitutional violation occurred." The court went on to deny as moot Warmelink's motion for clarification.

On December 28, 2010, four residents timely filed a notice of appeal as to the December 2 order. The notice mentioned the Town, the Town Defendants, and Warmelink, but not the December 3 order. Later, at Warmelink's request, the district court entered a separate judgment pursuant to Fed. R. Civ. P. 58(a). This February 15, 2011, order mentioned by name all relevant defendants, including Warmelink. The residents did not file a new notice of appeal after the February 15 order was issued.

Warmelink contends that the peculiar procedural posture we just described precludes us from exercising jurisdiction over him. Because the notice of appeal fails to mention either the December 3 or February 15 orders, the only orders in which he is named, Warmelink asserts that the residents failed to comply with Fed. R. App. P. 3(c)(1)(B), which requires appellants to "designate the judgment, order, or part thereof being appealed."

The requirements of Rule 3(c) are technically jurisdictional, *see Smith v. Barry*, 502 U.S. 244, 248 (1992), but as a general rule " 'inept' attempts to comply with Rule 3(c) are accepted as long as the appellee is not harmed," *Moran Foods, Inc. v. Mid-Atl. Mkt. Dev. Co.*, 476 F.3d 436, 440 (7th Cir. 2007). That means that "an error in designating the judgment will not result in a loss of appeal if the intent to appeal from the contested judgment may be inferred from the notice and if the appellee has not been

misled by the defect." *United States v. Dowell*, 257 F.3d 694, 698 (7th Cir. 2001). Warmelink makes quite a fuss about the residents' failure to comply with Rule 3, but conspicuously absent from his argument is any allegation that he was misled or otherwise prejudiced by the imprecision of the residents' notice of appeal, which explicitly named him as an appellee. And while he correctly observes that a copy of the December 3 order is absent from the residents' briefing, *see* Fed. R. App. P. 30(a)(1); Cir. R. 30(a), he fails to note that the residents included a copy of the February 15 order, which unambiguously enters judgment in his favor. Because "the notice afforded by a document . . . determines the document's sufficiency as a notice of appeal," *Smith*, 502 U.S. at 248, and Warmelink was plainly "apprise[d] . . . of the issues challenged," *United States v. Segal*, 432 F.3d 767, 772 (7th Cir. 2005), we conclude that we have jurisdiction over the appeal as to him.

Warmelink contends in the alternative that the residents waived any argument as to him by failing to adequately develop one in their opening brief. *See, e.g.*, *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) ("[U]nsupported and underdeveloped arguments are waived."(quotation omitted)). We again disagree. The residents' briefing, while not exemplary by any means, discusses Warmelink and includes in its appendix the Rule 58(a) judgment he requested. It also implicitly addresses Warmelink inasmuch as the residents' claim against him rises or falls with their claims against the other defendants. That is enough, barely.

The underdeveloped argument as to him is not the only briefing deficiency Warmelink identifies. He, like the Town and Town Defendants, also argues that the residents' opening brief so egregiously violates Fed. R. App. P. 28(a)(7) and Circuit Rule 28 that all or parts of it should be stricken. *See, e.g.*, *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 701-03 (7th Cir. 2010); *Casna v. City of Loves Park*, 574 F.3d 420, 423-24 (7th Cir. 2009).

It is true that the residents' briefing leaves much to be desired. Portions of the facts section have a decidedly argumentative tinge (there are eight sentences beginning with "Consistent with the other irregularities . . .", and several featuring conclusory statements like "the town did not hold [Innsbrook developer] Washburn to the requirements of the law"), several propositions lack citations, and many of the unusually formatted citations that are included do not actually support the propositions they purport to. These deficiencies render both the residents' and our jobs more difficult than they ought to be. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 n.4 (7th Cir. 2008); *cf. Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1001 (7th Cir. 2004) ("[W]e will not root through the hundreds of documents and thousands of pages that make up the record here to make [plaintiff's] case for him."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in [the record]."). Perhaps most troubling is the residents' reliance on allegations made in their complaint as "evidence" to support their claims on summary judgment, which is "not the proper standard for summary judgment." *Mosley v. City of Chi.*, 614 F.3d

391, 400 (7th Cir. 2010); *see also* Fed. R. Civ. P. 56(c); *Payne v. Pauley*, 337 F.3d 767, 772-73 (7th Cir. 2003) ("[T]he Federal Rules of Civil Procedure require the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.' Conclusory allegations, unsupported by specific facts, will not suffice." (quoting Fed. R. Civ. P. 56(e))).

We nevertheless decline appellees' invitations to strike the residents' brief. We caution counsel, however, that flouting the rules in the future may well lead to striking or even sanctions. *See L.S.F. Transp., Inc. v. N.L.R.B.*, 282 F.3d 972, 975 n.1 (7th Cir. 2002). Even without much help from the residents, we are confident that we have located and considered the relevant evidence such that we may make an informed assessment of the residents' arguments. It is to those arguments we now turn.

The residents challenge the district court's entry of summary judgment on their § 1983 equal protection claim. "In a § 1983 case, the plaintiff[s] bear[ ] the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). In conducting our de novo review, we view the facts in the light most favorable to the residents and draw all reasonable inferences in their favor. *E.g., Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

The residents' first argument does not look any better even through the summary judgment lens angled in

their favor, however, because it wholly lacks a basis in the record. The residents contend that the district court erred by sua sponte granting summary judgment on grounds the defendants failed to raise. But not only was the district court's summary judgment ruling made at the behest of both sides, *see* R.401 & 406 (residents' motions for summary judgment); R.432 (Town & Town Defendants' motion for summary judgment); R. 449 (Warmelink's motion for summary judgment), *contra Black's Law Dictionary* 1560 (9th ed. 2009) (defining "sua sponte" as "[w]ithout prompting or suggestion; on its own motion"), it also rested on grounds briefed by the Town and Town Defendants, *see* R.434 at 59. Warmelink did not brief those grounds, *see* R.445, but a district court may enter summary judgment even in favor of non-moving defendants "if granting the motion would bar the claim against those non-moving defendants." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 384 (7th Cir. 2008); *see also Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000) ("[W]here one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant summary judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition."). The residents had ample notice of the grounds on which the defendants sought summary judgment and submitted briefs in opposition to the motions. *See* R.505 & 511. The district court committed no error here.

The residents' second argument is more palatable than their first but in the end is equally unavailing. They

contend that they raised a genuine issue of material fact as to whether the defendants treated them worse than similarly situated white homeowners, both by failing to hold the developer whose subdivision they opposed to stringent standards and by failing to maintain the troublesome retention pond.

To prevail in this § 1983 action, the residents need to establish that they were deprived of a federal right, privilege, or immunity by a person (or persons) acting under color of state law. *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005). There is no dispute that the residents have a right to be treated without regard to their race. U.S. Const. amend. XIV. The district court found that the residents failed to show that the defendants, all of whom it assumed were acting under color of state law, deprived them of that right.[1] To make such a showing, which is analogous to that necessary in the more familiar Title VII context, *see Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003), the residents, who proceeded under the indirect method, needed to come forward with evidence from which a jury could conclude (1) they were members of a protected class; (2) they were similarly situated to members of an unprotected class in

---

[1] Defendant Warmelink maintains that he is not a "state actor" susceptible to suit under 42 U.S.C. § 1983. We need not address this argument, for, as we explain below, the residents are unable to establish a crucial element of their claim as to *all* defendants: that they are similarly situated to a better-treated comparator. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

all relevant respects; and (3) they were treated differently from members of the unprotected class, *Brown*, 398 F.3d at 916. The district court found that the residents, all of whom are non-white, demonstrated that they were members of a protected class. It found that they could not show, however, that they were similarly situated to members of an unprotected class. The district court recognized that the residents were attempting to liken themselves to residents of Southmoor, a different sub-division next to which new construction was also being proposed and opposed. It noted that the residents alleged in their complaint that Southmoor's residents were "predominately white," but was unable to discern any admissible evidence showing that or other similarities between Innsbrook and Southmoor, such as their zoning statuses, locations, relative sizes, or neigh-borhood infrastructures.

The equal protection clause requires similar treatment of similarly situated persons; it "does not require things which are different in fact or opinion to be treated in law as though they were the same." *Varner v. Monohan*, 460 F.3d 861, 865 (7th Cir. 2006) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Demonstrating that they are similarly situated to another group consequently is essen-tial to the success of the residents' claims. "The 'similarly situated' analysis is not a 'precise formula,' but we have stated repeatedly that what is 'clear [is] that similarly situated individuals must be very similar indeed.' " *La Bella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004)). For instance,

in evaluating workplace equal protection claims, we consider whether the employees at issue had the same job description, dealt with the same supervisor, were subject to the same standards, and had comparable experience, education, and qualifications. *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003).

The residents claim they are similarly situated to the residents of Southmoor in a variety of ways. According to the residents, both groups voiced opposition to new developments while those developments were in the preliminary zoning phase; both groups attended the same zoning board meetings in 2005; both new developments consisted of single-family homes in areas zoned R2; and the same ordinances were in effect while both developments were being approved and built. The residents also point us to their complaint to support their allegations that the residents of Southmoor were white.

These alleged similarities might seem superficially adequate to create a genuine issue of material fact, but on closer inspection of the residents' proffered evidence no rational jury could conclude that they were similarly situated to the residents of Southmoor. Indeed, the residents have not pointed to any admissible evidence supporting their predicate contention that the Southmoor residents were a different race than they are. Plaintiffs cannot idly rest on the conclusory allegations of their complaint at this stage of the game. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]he plaintiff could not rest on his allegations of a conspiracy to get to a jury without any significant probative evidence

tending to support the complaint." (quotation omitted)); *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) ("We often call summary judgment the 'put up or shut up' moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case. And by evidence, we mean evidence on which a reasonable jury could rely." (citations omitted)). They need some evidence to present to a jury, and they simply do not have it.

To the contrary, several portions of the record to which they point seemingly undermine their contentions. Madison Meadows, the subdivision the Southmoor residents were contesting, was slated to consist of mostly duplexes and was zoned R2 and R3, *see* R.528-6, while the contested Innsbrook expansion comprised exclusively single-family homes in an R2 zone, *see* R.541-8. The record does support the contention that both sets of residents objected during the preliminary approval process, but the residents neglect to mention that the Town deferred its approval of the Innsbrook expansion and granted them a private meeting to address their concerns about the development before taking up the issue at a subsequent zoning meeting. *See* R.541-8; 542-1; 542-4. No residents raised objections to the development at that subsequent meeting, *see* R.542-1, or at the meeting during which the Innsbrook expansion was given the final go-ahead, *see* R.528-2. The Southmoor residents, over whose objections the Town granted conditional preliminary approval without any such deferral or private meeting, seem to have been treated *less* favorably than the

Innsbrook residents in this regard. Moreover, the record reveals that Southmoor does not even contain a retention pond, the ostensible font of all the Innsbrook residents' troubles.

Without a similarly situated comparator, the Innsbrook residents' equal protection claim cannot hold water. The district court did not err in granting summary judgment in the defendants' favor. It likewise did not err in failing to address the residents' belatedly asserted and undeveloped contention that the defendants violated their First Amendment rights by suppressing their speech. The residents theorized at oral argument—and in a single paragraph of their opening brief—that the defendants violated their free speech rights by failing to listen to them. They conceded, however, that none of their submissions to this court or to the district court cited a single free speech case, or even a case involving the intersection of equal protection and the freedom of speech, an oblique allusion to which is minimally discernible from a generous reading of their second amended complaint. Any First Amendment claim they purport to raise is therefore waived. *See United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008) ("We have repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (quotation omitted)).

The district court did commit one small error that we must address. When it declined to exercise supplemental jurisdiction over the residents' state law claims, the district court "remanded" them back to state court.

But this case did not originate in state court, so there was nowhere to remand the state law claims to. *See Black's Law Dictionary* 1407 (9th ed. 2009) (defining the verb "remand" as "[t]o send (a case or claim) back to the court or tribunal from which it came for some further action"). Once the district court declined to exercise supplemental jurisdiction over the claims, the proper course would have been to dismiss them without prejudice. *E.g.*, *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). We MODIFY the district court's judgment to dismiss without prejudice rather than remand the state law claims. As modified, the judgment is otherwise AFFIRMED.