In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2559

INDIANA PETROLEUM MARKETERS AND
CONVENIENCE STORE ASSOCIATION, *et al.*,

*Plaintiffs-Appellants*,

*v.*

DAVID COOK, in his official capacity
as Chairman of the Indiana Alcohol
and Tobacco Commission,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-00784-RLY-DML — **Richard L. Young**, *Chief Judge*.

ARGUED JANUARY 7, 2015 — DECIDED DECEMBER 14, 2015

Before RIPPLE, WILLIAMS, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. An association of Indiana convenience stores filed this lawsuit seeking to invalidate a state law that restricts the sale of cold packaged beer. The suit claims the law violates the Equal Protection Clause because some kinds of stores may sell cold beer but grocery and

convenience stores may not. The district court upheld the law and entered judgment for Indiana.

We affirm. A threshold question is the extent to which the Twenty-first Amendment affects this case. Indiana argues it has "nearly absolute" authority to regulate alcohol sales under the Twenty-first Amendment and no further analysis is necessary. That's not correct. But the district court was right to uphold the law. Indiana's cold-beer statute is subject to rational-basis review and survives that lenient standard.

## I. Background

The Indiana Petroleum Marketers and Convenience Store Association is a trade association that serves the interests of gas stations and convenience stores located in the state. The Association, together with three of its members and an individual consumer, filed suit in federal court challenging the constitutionality of section 7.1-5-10-11 of the Indiana Code, which prohibits holders of a beer dealer's permit from selling cooled packaged beer. The suit contends that the statute substantially reduces the beer sales of the Association's members and diverts those sales elsewhere.

The defendants named in the complaint are the chairman of the Indiana Alcohol and Tobacco Commission, sued in his official capacity; the Commission itself; and the State of Indiana. The Commission and Indiana were dropped from the suit by stipulation, so the Commission chairman is the sole remaining defendant.[1] Because he is sued in his official

---

[1] We've changed the case caption to reflect the name of the current Commission chairman.

capacity, we'll refer to the defendant as "Indiana." We'll refer to the plaintiffs collectively as "the Association."

The complaint alleges that the cold-beer statute violates the Commerce Clause, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and parallel provisions in the Indiana Constitution. The equal-protection claim rests on two separate theories. First, the Association contends that the Indiana statutory scheme permits cold-beer sales by grocery and convenience stores located in *unincorporated* towns but prohibits the sale of cold beer at like stores in *incorporated* municipalities. Second, the Association contends that the statutory scheme impermissibly discriminates between package liquor stores, which are permitted to sell cold beer, and grocery and convenience stores, which are not.

The district judge resolved the case on cross-motions for summary judgment. He rejected the first equal-protection theory because the statutory scheme does not actually allow grocery and convenience stores in unincorporated towns to sell cold beer, as the Association contended. On the second equal-protection theory, the judge held that Indiana has a rational basis for prohibiting grocery and convenience stores from selling cold beer. The judge also considered and rejected the other constitutional challenges and granted Indiana's motion for summary judgment in its entirety. By separate order the judge denied the Association's motion and entered final judgment for Indiana.

The Association appealed, focusing solely on the equal-protection claim.

## II. Discussion

### A. Twenty-first Amendment

Indiana argues that the plaintiffs' equal-protection challenge is "doomed" because state authority to regulate how alcoholic beverages are sold is "nearly absolute" under the Twenty-first Amendment. That's a considerable overstatement.

The Twenty-first Amendment ended Prohibition and restored the regulatory authority of the States over the transportation and importation of alcoholic beverages within their borders. More specifically, § 2 of the Amendment provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, *in violation of the laws thereof*, is hereby prohibited." U.S. CONST. amend. XXI § 2 (emphasis added). As the Supreme Court has explained, § 2 of the Twenty-first Amendment restored state regulatory authority as it existed prior to the ratification of the Eighteenth Amendment, but it did not immunize state alcohol laws from challenge under other parts of the Constitution. *Granholm v. Heald*, 544 U.S. 460, 484–88 (2005).

*Granholm* was a Commerce Clause challenge to laws in Michigan and New York prohibiting out-of-state wineries from selling directly to consumers in those states. *Id.* at 465–66. The Court invalidated the two laws, holding that the dormant Commerce Clause "does not allow States to ban, or severely limit, the direct shipment of out-of-state wine while simultaneously authorizing direct shipment by in-state producers." *Id.* at 493.

Along the way to this holding, the Court explained that "state laws that violate other provisions of the Constitution are not saved by the Twenty-first Amendment." *Id*. at 486. To illustrate the point, the Court cited several of its cases applying other constitutional provisions to state alcohol regulation, including challenges under the First Amendment, the Establishment Clause, the Equal Protection Clause, the Due Process Clause, the Import-Export Clause, Congress's Commerce Power, and the dormant Commerce Clause. *Id.* at 486–87.

Indiana points to other language in *Granholm* that in its view supports expansive state power to regulate alcohol without the usual constitutional limits. The Court said that "[t]he Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." *Id.* at 488 (quoting *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980)). This passage cannot be read in isolation. What comes next in the opinion clarifies the Court's point: "A State which chooses to ban the sale and consumption of alcohol altogether could bar its importation; and, as our history shows, it would have to do so to make its laws effective." *Id.* at 488–89. In other words, the States have the power under the Twenty-first Amendment to ban the importation of alcohol, but to avoid transgressing the limits of the dormant Commerce Clause, they may do so only if they also ban the *intrastate* sale and consumption of alcohol.

The Court also said that the three-tier distribution alcohol system in use in many states—a system that requires the separation of producers, distributors/wholesalers, and

retailers—is "unquestionably legitimate" as state policy. *Id.*
at 489. This statement, too, must be understood in context.
The Court explained that "[s]tate policies [like the three-tier
distribution system] are protected under the Twenty-first
Amendment when they treat liquor produced out of state
the same as its domestic equivalent." *Id.* That is, the dormant
Commerce Clause isn't violated by a three-tier distribution
system that treats all alcohol sales equivalently regardless of
origin.

These passages from *Granholm* make it clear that the reg-
ulatory power of the States under the Twenty-first Amend-
ment remains subject to other constitutional limits, including
the limits imposed by the Equal Protection Clause. *See Craig
v. Boren*, 429 U.S. 190, 209 (1976) (holding that "the Twenty-
first Amendment does not alter the application of equal
protection standards that otherwise govern this case" and
striking down a law that permitted women aged 18–21 to
buy beer while denying men the same right). That the States
have broad authority under the Twenty-first Amendment to
design their regulatory systems for the transportation,
importation, and distribution of alcohol doesn't mean they
can ignore the rest of the Constitution. In short, the Twenty-
first Amendment doesn't immunize Indiana's cold-beer
statute from equal-protection challenge.

**B. Equal Protection**

Moving to the merits, because the cold-beer statute
doesn't involve a suspect classification, rational-basis review
applies. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).
This is a heavy legal lift for the challengers. Under rational-
basis review, a statutory classification comes to court bearing
"a strong presumption of validity," and the challenger must

"negative every conceivable basis which might support it." *Id.* at 314–15 (quotation marks omitted). "To uphold a legislative choice, we need only find a 'reasonably conceivable state of facts that could provide a rational basis' for the classification." *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1072 (7th Cir. 2013) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

To carry its burden, the Association must establish that Indiana's cold-beer regulatory scheme treats its members differently than others similarly situated and the difference in treatment is not rationally related to a legitimate state interest. *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). As we've noted, the Association claims that the Indiana law treats grocery and convenience stores differently in two respects: (1) it permits grocery and convenience stores to sell cold beer if they're located in *unincorporated* towns but not if they're located in *incorporated* municipalities; and (2) it permits package liquor stores to sell cold beer but not grocery and convenience stores. We'll address each argument in turn. Before we do, however, a more complete explanation of the regulatory scheme is necessary.

### 1. *Indiana's Permitting Statutes for Beer Sales*

As relevant here, Indiana issues two types of permits authorizing the sale of beer. The first is a "beer dealer's" permit, which may be issued "to a person who desires to sell beer to customers for consumption only *off the licensed premises*." IND. CODE § 7.1-3-5-1 (emphasis added). The holder of this kind of permit "may not sell beer by the drink nor for consumption on the licensed premises nor shall a beer dealer allow it to be consumed on the licensed premises." *Id.* § 7.1-3-5-3(c). A beer dealer's permit is available "only

to an applicant who is the proprietor of a drug store, grocery store, or package liquor store." *Id.* § 7.1-3-5-2(a). Convenience stores are included within the definition of grocery stores as long as alcohol sales represent no more than 25% of their annual gross sales. *Id.* § 7.1-1-3-18.5.

With one notable exception, holders of a beer dealer's permit cannot sell "beer that was iced or cooled by the permittee before or at the time of the sale." *Id.* § 7.1-5-10-11(a). The exception is for package liquor stores, which are allowed "to sell and deliver warm *or cold* beer for carry-out." *Id.* § 7.1-3-5-3(d) (emphasis added). We'll return to package liquor stores in greater detail later.

The second type of permit is a "beer retailer's" permit, which may be issued "to a person who desires to sell beer to customers *for consumption on the licensed premises*." *Id.* § 7.1-3-4-1 (emphasis added). A beer retailer's permit may not be issued to "[a] person who is *not* the proprietor of a restaurant … , or of a hotel, or of a club." *Id.* § 7.1-3-4-2(a)(13) (emphasis added). Beer retailers may serve beer for consumption on the licensed premises and sell packaged beer (warm or cold) for consumption elsewhere. *Id.* § 7.1-3-4-6(a), (c).

### 2. *Incorporated vs. Unincorporated Towns*

The Association's first equal-protection argument is that grocery and convenience stores in unincorporated towns are permitted to sell cold beer but grocery and convenience stores in incorporated municipalities are prohibited from doing the same. This difference in treatment, the Association argues, lacks a rational basis because none of the reasons for restricting sales of cold beer are any stronger in unincorpo-

rated, unpoliced towns than in incorporated, policed munic-ipalities. Indiana responds that the Association has misun-derstood the statutory scheme: grocery and convenience stores located in unincorporated towns are *not* allowed to sell cold beer, so there's no difference in treatment in the first place.

We agree with Indiana: The Association's argument rests on a misreading of the regulatory system. As we've ex-plained, a grocery or convenience store holding a beer *dealer's* permit is not allowed to sell cold beer *regardless* of where the store is located. The Association's argument relies on a provision in the statute governing the issuance of a beer *retailer's* permit:

> Premises Outside Corporate Limits: Persons Eligible. The commission may issue a beer re-tailer's permit as authorized by IC 1971, 7.1-3-4-3, only to an applicant who is the proprietor of a drug store, grocery store, confectionery, or of a store in good repute which, in the judg-ment of the commission, deals in other mer-chandise that is not incompatible with the sale of beer.

IND. CODE § 7.1-3-4-4. The cross-referenced provision, sec-tion 7.1-3-4-3, allows the Commission to issue a beer retail-er's permit "within, or in immediate proximity to, an unin-corporated town," provided that certain criteria are met. As noted above, however, another statute imposes an important restriction on the issuance of a beer retailer's permit, one that has special relevance here: "[E]xcept as otherwise authorized in this title," the Commission may not issue a beer retailer's

permit to anyone who "is not the proprietor of a restaurant[,] … hotel, or … club." § 7.1-3-4-2(a)(13).

The Association seizes on the "except as otherwise authorized" language and points to sections 7.1-3-4-3 and 7.1-3-4-4, mentioned above, which authorize the Commission to issue a beer retailer's permit to grocery and convenience stores in unincorporated towns, at least in theory. But this theoretical possibility is difficult to square with the general provision limiting beer retailers' permits to "person[s] who desire[] to sell beer to customers *for consumption on the licensed premises*," § 7.1-3-4-1 (emphasis added), which obviously doesn't describe grocery and convenience stores.[2]

We don't need to untangle this statutory thicket to resolve this case. As a practical matter, grocery and convenience stores can only sell beer under a beer *dealer's* permit; their business model would have to shift considerably to secure a *retailer's* permit. For starters, to be eligible for a retailer's permit, a grocery or convenience store would need to alter its operations to serve alcohol to customers *inside* the store. *Id.* Self-service selection of beer from the shelf or cooler would be prohibited. 905 IND. ADMIN. CODE 1-29-2 ("Package alcoholic beverages shall be sold by a retail permittee only in … the room where alcoholic beverages are stored, prepared,

---

[2] Other provisions in the statutory scheme also suggest that entities serving alcohol in-house are expected to hold a beer retailer's permit and those selling alcohol for consumption elsewhere—like grocery and convenience stores—are expected to hold a beer dealer's permit. To take one example, the term "alcohol servers" is defined to mean managers, bartenders, and waiters and waitresses for purposes of beer retailers, but for beer dealers the same term is defined to mean managers and sales clerks. *See* IND. CODE § 7.1-3-1.5-1.

or dispensed … . There may not be a separate cash register for package sales. There shall be no self-service.”). Instead of having sales clerks and store managers sell alcohol, only bartenders, wait staff, and managers would be permitted to do so, and they would need additional “employees’ permits” from the Commission. *See* IND. CODE § 7.1-3-1.5-1 (defining “alcohol servers”); *id.* § 7.1-3-18-9(a), (c) (listing when an employee’s permit is required for alcohol sales). Employees under 21 years of age would be ineligible to serve or sell beer. *Id.* § 7.1-5-7-12, -13(3) (exceptions allowed only for service “in a dining area or family room of a restaurant or hotel”).

This litany of requirements for the issuance of a beer retailer’s permit exposes the fundamental flaw in the Association’s argument. Grocery and convenience stores *throughout* Indiana—whether in unincorporated towns or incorporated municipalities—simply don’t operate in the manner required for a beer retailer’s permit. So it’s no surprise that the Association hasn’t found any evidence that a grocery or convenience store located *anywhere* in Indiana has a beer retailer’s permit. To the contrary, there *is* evidence in the record that officers of the Indiana Excise Police have issued citations to grocery and convenience stores in unincorporated towns for unlawfully selling cold beer in violation of the statutes governing their beer dealers’ permits.

Indeed, there’s no evidence that the Association and its members even *want* a retailer’s permit, which is wholly inconsistent with the business model of a grocery or convenience store. Instead, the Association’s members want to sell cold beer within their *current* business model; that’s why they’re asking us to invalidate the cold-beer sales restriction

on the beer *dealer's* permit. *Id.* § 7.1-5-10-11. But the statutory scheme that governs beer dealers doesn't distinguish between grocery and convenience stores in incorporated and unincorporated areas. All are treated the same.

### 3. *Grocery Stores, Convenience Stores, and Pharmacies vs. Package Liquor Stores*

The Association's second equal-protection argument is that package liquor stores are permitted to sell cold packaged beer but grocery and convenience stores are not. *See* §§ 7.1-5-10-11, 7.1-3-5-3(d). Indiana defends this distinction by noting that package liquor stores are subject to stricter regulations designed to enhance the State's ability to limit and control the distribution of alcohol. For instance, no one under the age of 21 is permitted on the premises of a package liquor store. *Compare* IND. CODE § 7.1-5-7-10 *with id.* § 7.1-5-7-11(a) (listing exceptions not applicable here). Sales clerks must be at least 21 years old. *See id.* § 7.1-5-7-12 (prohibiting the sale of alcohol by minors); *see also id.* § 7.1-5-7-13 (establishing a limited exception for 19- and 20-year-old servers in restaurants and hotels, provided that they have special training and are supervised by a trained employee over the age of 21). Hours and days of operation are restricted. *See, e.g., id.* § 7.1-5-10-1 (requiring licensed premises to close during times that alcohol sales are unlawful "to the extent that the nature of the business … permits"); *id.* § 7.1-3-1-14(a) (providing that alcohol sales are lawful Monday through Saturday from 7 a.m. to 3 a.m. the following day).

Indiana explains that the goal of this regulatory scheme is to curb underage beer consumption by limiting the sale of immediately consumable cold beer. Restricting the sale of

cold beer to stores that are more rigorously regulated is rationally related to that legitimate goal.

The Association attacks this legislative choice with several policy arguments: beer is beer, and grocery and convenience stores already sell it, just not cold; grocery and convenience stores are permitted to sell chilled drinks with higher alcohol content (like wine coolers) so why not chilled beer; grocery and convenience stores have a better record of compliance with state alcohol laws than liquor stores; grocery and convenience stores are frequented by police officers and other adult customers, deterring underage persons from trying to buy alcohol there; and selling beer in refrigerators makes it less accessible than selling it warm.

This mode of argument doesn't suffice under rational-basis review. To succeed on its claim, the Association must "negative every conceivable basis which might support" the statutory scheme. *Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2080–81 (2012) (quotation marks omitted). The Association's policy arguments for allowing cold-beer sales by grocery and convenience stores are matters for the Indiana legislature, not the federal judiciary.

For the foregoing reasons, the Association has failed to carry its burden of demonstrating that Indiana's cold-beer statute violates the Equal Protection Clause.

AFFIRMED.