In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-2877

COMMON CAUSE INDIANA,

*Plaintiff-Appellee,*

*v.*

CONNIE LAWSON, *et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:20-cv-01825-RLY-TAB — **Richard L. Young**, *Judge.*

SUBMITTED OCTOBER 21, 2020 — DECIDED OCTOBER 23, 2020

Before SYKES, *Chief Judge*, and EASTERBROOK and BRENNAN,
*Circuit Judges.*

PER CURIAM. Last year Indiana amended its election code's
standards for extending the hour polls close. Last month the
district court enjoined these amendments, first concluding
they unconstitutionally burden Indiana residents' fundamen-
tal right to vote, and then determining they violate the Su-
premacy Clause of the U.S. Constitution. After the district
court denied a request to stay the injunction, various Indiana

state officials charged with administering elections appealed and now move this court to stay the injunction pending appeal.

## I. Background

Indiana law provides that state's election polls open at 6 a.m. and close at 6 p.m. IND. CODE § 3-11-8-8. In 2019 Indiana enacted three statutes that amended its election code and set standards for issuing an order extending the hour polls close. What the parties call the "standing amendment" provides that "[o]nly a county election board has standing in an Indiana court … to file an action or petition to request the extension of the hour for closing the polls … ," and only if the board's members unanimously vote to file suit. IND. CODE § 3-11.7-7-2. Under what the parties term the "remedies amendment," before a court may issue an order extending the hour for the polls to close, a number of evidentiary and other findings must be made, including that the polls were substantially delayed in opening or subsequently closed during normal polling hours, IND. CODE §§ 3-11.7-7-3, and any extension must be limited to not more than the duration of time the polls were closed and only for those polls whose opening was delayed. IND. CODE § 3-11.7-7-4.

More than a year after Indiana enacted these amendments, plaintiff Common Cause sued the Indiana Secretary of State and various other state officials in federal court and sought a preliminary injunction enjoining the enforcement of these statutes. Plaintiff argues the amendments (1) unconstitutionally burden the fundamental right to vote, (2) divest state courts of jurisdiction to hear federal claims in violation of the Supremacy Clause, and (3) deprive voters of procedural due process.

On September 22, 2020 the district court granted plaintiff's request for a preliminary injunction on the ground that the amendments unconstitutionally burden Indiana residents' fundamental right to vote.[1] The court found that at least some voters were likely to experience delayed poll openings, closures, or other issues at the polls. Those voters would be disenfranchised, the court decided, if they cannot sue for an extension of voting hours on election day. The court concluded that the amendments could not survive the balancing test described in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), under which the burden that a state regulation imposes on the right to vote is weighed against the state's interest in enacting the regulation. The court found that plaintiff had shown it is likely to succeed on the merits of its claim, but it did not address plaintiff's other contentions. The court also found irreparable injury with no adequate remedy at law, that the balance of harms favored the plaintiff, and that the injunction was in the public interest. So the court enjoined defendants from implementing, enforcing, administering, invoking, or giving any effect to the amendments.

The defendants moved to stay the district court's ruling pending appeal. The district court denied this stay request and supplemented its reasoning in support of the injunction. The court found that the amendments violated the Supremacy Clause.[2] To the district court, the standing amendment

---

[1] Seven days later the district court complied with the separate order requirement of FED. R. CIV. P. 65(d). Dist. Ct. D.E. 80.

[2] U.S. CONSTITUTION Art. VI, cl. 2 provides that the Constitution and the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby."

divested state courts of jurisdiction to hear § 1983 suits brought by any plaintiff, other than a unanimous county election board, seeking an extension of poll hours. Likewise, the remedies amendment prohibited state courts from granting relief pursuant to § 1983, unless that relief was already sanctioned under state law. The district court also concluded that *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006), which generally prohibits federal courts from changing state election rules close to the date of an election, did not apply here because the preliminary injunction did not alter any ongoing election activity or pose a risk of creating voter confusion, as these amendments concerned activities on the day of the election.

The state defendants appeal and move this court for a stay of the preliminary injunction pending appeal.

## II. Discussion

We consider four factors when deciding whether to stay an injunction pending appeal: (1) the likelihood the applicant will succeed on the merits of the appeal; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009); *Venckiene v. United States*, 929 F.3d 843, 853 (7th Cir. 2019). "The standard calls for equitable balancing, much like that required in deciding whether to grant a preliminary injunction … ." *Id*. at at 853.

We review the district court's denial of the stay for an abuse of discretion. *See Nken*, 556 U.S. at 433. The district court's legal conclusions are reviewed de novo, *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020), and its findings of fact for clear error. *Venckiene*, 929 F.3d at 853. Also, "if a district court

bases an exercise of discretion on a legal error, it turns out to abuse its discretion." *Id*. (citations omitted).

First we consider the likelihood of success on the merits and irreparable injury factors. These first two factors are most critical, *Nken*, 556 U.S. at 434, and the focus of the parties' arguments. Then we discuss the timing of the injunction.

**A. Likelihood of Success on the Merits**

Each side argues it is more likely to succeed on the merits on three points.

*1. Burden on the fundamental right to vote*

Plaintiff contends that, under the *Anderson-Burdick* test, the amendments unduly burden the fundamental right to vote without any relevant and legitimate governmental interest. To the plaintiff, the standing amendment creates a "functionally insurmountable" multiple-step process that leaves a voter unable to petition a court to extend poll hours. Voters are also left without recourse by the remedies amendment, the plaintiff argues, because those statutes limit state courts' authority to extend polling hours.

The state defendants offer two responses. First, the *Anderson-Burdick* test "must not evaluate each clause [of a state's election code] in isolation." *Luft v. Evers*, 963 F.3d 665, 671 (7th Cir. 2020). Instead, "[c]ourts weigh these burdens against the state's interest looking at the whole electoral system. Only when voting rights have been severely restricted must states have compelling interests and narrowly tailored rules." *Id*. at 671-72 (internal citations omitted). Under that approach, the *Anderson-Burdick* test remains properly deferential to state legislation. Second, the amendments challenged here are justified for a number of reasons, including to avoid clogging the

Indiana courts with election day lawsuits, to prevent extensions sought by a single voter or unduly partisan group, and to ensure timely vote tallies.

The district court applied the *Anderson-Burdick* balancing test to conclude that the 2019 amendments unconstitutionally burdened the fundamental right to vote. But as the state defendants correctly point out, the legislature's decision in these amendments to define a cause of action under state law for extending poll closing does not place any burden on Indiana residents' constitutional right to cast a ballot. Viewed as a whole—which, as the defendants point out, our court's law requires under *Anderson-Burdick*—Indiana's election rules, and their burdens on voters, remain essentially unchanged by these amendments.

The district court rested its conclusion that the amendments burdened the right to vote on the possibility that some imaginable circumstance exists in which those provisions might affect voters. But *Anderson-Burdick* does not license such narrow second-guessing of legislative decision making. The district court's reasoning fell into that trap. *See* Dist. Ct. D.E. 73, p. 17. Rather, "[o]ne less-convenient feature does not an unconstitutional system make." *Luft*, 963 F.3d at 675; *see also Tully*, 2020 WL 5905325, at *6. A comprehensive reading of Indiana's election laws does not support the district court's conclusion.

So the district court incorrectly concluded that the amendments were unconstitutional under the *Anderson-Burdick* standard. Plaintiff, in support of its claim that the amendments burden Indiana citizens' right to vote, points to evidence that unforeseen circumstances on election day could disenfranchise voters unless they obtain an extension of

polling hours. What plaintiff desires—and what the district court held is essential—is a private right of action to enforce the amendments. But we are not aware that the Supreme Court or any court of appeals has held that the Constitution requires a state to provide a private right of action to enforce any state law. And to the extent that federal law will require Indiana to provide such an extension, voters can always invoke their federal rights in an action under 42 U.S.C. § 1983. These amendments do not place a burden on the right to vote, and the justifications the defendants offer in their support stand to reason.

### 2. Supremacy Clause

In its complaint, before the district court, and on appeal, plaintiff argues the amendments violate the Supremacy Clause. Once a state creates courts of general jurisdiction with authority to hear claims, including under § 1983, the Supremacy Clause forbids eliminating jurisdiction for only a particular type of lawsuit. The result would be to immunize would-be defendants from litigation in state court. For the plaintiff, the standing amendment violates this principle by stripping Indiana courts of authority to consider voters' claims against state and county election officials under § 1983 when such claims specifically seek prospective injunctive relief in the form of an extension of polling place hours. And the remedies amendment contravenes the Supremacy Clause by withdrawing from state courts the authority otherwise available under § 1983 to extend polling-place hours where voters face disenfranchising conditions other than the physical closure of their polling place. The defendants respond that plaintiff misreads the amendments when it characterizes them as an attempt to prevent suits under § 1983.

The defendants are correct. The amendments describe a state-law cause of action to obtain an extension of polling hours, with specific limitations on who may sue, the available justifications, and the scope of the remedy. Those limits on standing and remedies are reasonably read to apply only to the claim described in the amendments, not otherwise.

A state lacks the power to limit state courts' ability to hear § 1983 claims. *Haywood v. Drown*, 556 U.S. 729 (2009). Indiana obviously lacks the authority to alter federal law. Nothing in the amendments eliminates or restricts § 1983 litigation, nor can the amendments plausibly be read to have that effect.

Even more, if we were to accept plaintiff's interpretation, the preliminary injunction entered here is not limited to this theory. An injunction "must not be broader than the legal justification for its entry." *Henderson v. Box*, 947 F.3d 482, 487 (7th Cir. 2020). The district court could have remedied the alleged problem by enjoining the statute as applied to § 1983 claims, yet the injunction is not so limited.

### 3. Procedural Due Process

Plaintiff also argues voters have a statutorily created liberty interest in statutorily established poll hours, and that Indiana must provide a vehicle to seek extensions in the poll hours so as not to deprive voters of that interest without constitutionally adequate process.

We need not spend much time on this argument, as even if voters have such an interest, the amendments have not deprived them of that interest. The amendments have not deprived anyone of the ability to vote, and a state action that merely jeopardizes a liberty interest does not violate due process. *See Beley v. City of Chicago*, 901 F.3d 823, 827 (7th Cir.

2018) (noting "the Fourteenth Amendment guarantees proce-dural protection for state action that *deprives* someone of a cognizable interest in life, liberty, or property, not for state ac-tion that *jeopardizes* that interest).

We conclude the defendants are likely to succeed on the merits of their appeal because the plaintiff's case lacks a valid constitutional theory. As to the remaining factors under *Nken*, without a stay, the state defendants' interests—and the pub-lic's—will be irreparably harmed. *See Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018) (holding that preventing a state from admin-istering an election under a constitutional state law "would seriously and irreparably harm the State."). For these reasons, we grant the motion for a stay of the preliminary injunction.

### B. Timing of the Injunction

The defendants contend that because the district court en-tered its injunction only five weeks before the election, and we consider this appeal less than two weeks before election day, the injunction runs afoul of *Purcell* and the Supreme Court's warning that federal courts should not alter election rules close to an election. 549 U.S. at 4–5. The plaintiff disagrees, arguing that *Purcell*'s reasoning does not apply here because the amendments affect only election-day activities, not ongo-ing election activities.

As a preliminary matter, plaintiff asserts that in the district court the state defendants waived reliance on *Purcell*. Accord-ing to plaintiff, counsel for the state defendants "acknowl-edged that this case does not pose a *Purcell* problem" during a hearing in July 2020. But that hearing was not recorded, and no transcript was created, so plaintiff relies solely on its own counsel's notes. The state defendants respond that their

counsel "merely observed that alterations to the [amend-ments] could be comparably less burdensome than other po-tential changes." Without a transcript, competing attorney statements about what was said at the hearing are too vague a basis on which to decide whether a *Purcell* argument was waived. Further, what counsel may have said in July was *about* July. That the state defendants' lawyers may have thought action in July was proper does not imply agreement to a three-month delay into late September.

Thus far this month this court has applied *Purcell* in three cases, one involving these same parties. In *Tully v. Okeson*, we noted that the "*Purcell* principle counsels federal courts to ex-ercise caution and restraint before upending state election regulations on the eve of an election." No. 20-2605, 2020 WL 5905325, at *1 (7th Cir. Oct. 6, 2020). While that case was ulti-mately decided on other grounds, *Tully* emphasized how wary *Purcell* made us of a request for an injunction mandating universal mail-in voting one month before an election. *Id*.

In *Democratic Nat'l Comm. v. Bostelmann*, No. 20-2835, 2020 WL 5951359, at *1 (7th Cir. Oct. 8, 2020), this court relied in part on *Purcell* to stay a district court injunction that changed how polling places should be staffed, extended deadlines for requesting and delivering mail-in ballots, and made other changes to Wisconsin's election rules. This court concluded that the district court had acted too late by issuing its injunc-tion less than four weeks before the first deadline it altered. *Id.* at *1.

And in a different case involving the same parties as at bar, this court relied on *Bostelmann*'s discussion of *Purcell* to stay an injunction extending Indiana's receipt deadline for mail-in ballots, issued around the same time as the Wisconsin

injunction. *Common Cause Indiana v. Lawson*, No. 20-2911, 2020 WL 6042121, at *2 (7th Cir. Oct. 13, 2020).

These three decisions emphasized the presumption against upholding last-minute injunctions, such as the injunction here. As discussed in *Common Cause Indiana v. Lawson*, 2020 WL 6042121, at *2, just like voters had many months since the SARS-CoV-2 pandemic ensued in this country this March to adjust to the election rules, plaintiff had more than a year to challenge these amendments. The problems plaintiff alleges with the amendments are not new, yet plaintiff asks that these duly enacted statutes be suspended on the eve of the election.

We conclude that the injunction here falls within *Purcell*'s ambit. As the decisions just discussed show, we have consistently stayed injunctions ordered this close to an election. And plaintiff brought the *Purcell* rule upon itself by waiting more than a year to bring this lawsuit after the legislature enacted these amendments. Plaintiff provides no explanation for its delay, nor does it point to any "last-minute event" that justified a "last-minute reaction." *Bostelmann*, 2020 WL 5951359, at *2.

Plaintiff argues there is a distinction between an injunction as to on-going election activities and election-day requirements, as in these amendments. But *Purcell* itself vacated an order altering an election day photo identification requirement, 549 U.S. at 4-5, and the decisions in *Bostelmann*, 2020 WL 595159 at * 1, and *Common Cause*, 2020 WL 6042121 at * 2, each altered election day ballot-receipt deadlines. So plaintiff reads *Purcell* too narrowly when it argues it applies to only "arguably affected ongoing election activities" and not election-day requirements.

Given the timing of the injunction, and the temporal proximity of the election, this case merits the deference counseled by *Purcell*.

### III. Conclusion

For the reasons relayed above, the state defendants are likely to succeed on the merits, and the injunction will cause irreparable harm. The district court abused its discretion by entering the preliminary injunction, so we GRANT the state defendants' motion to stay the injunction pursuant to FED. R. APP. P. 8(a)(2), and we confirm that Indiana may enforce the challenged statutes as written. Because there is not room for ongoing debate about the issues in this case, the preliminary injunction issued in this case is summarily reversed.