In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-3200

BARBARA LUKASZCZYK, *et al.*,

*Plaintiffs-Appellants*,

*v.*

COOK COUNTY, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-05407 — **Robert W. Gettleman**, *Judge*.

No. 21-3231

JOHN HALGREN, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF NAPERVILLE, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-05039 — **John Robert Blakey**, *Judge*.

No. 21-3371

SCOTT TROOGSTAD, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF CHICAGO and JAY ROBERT PRITZKER,
Governor,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-05600 — **John Z. Lee**, *Judge*.

_____

ARGUED MAY 26, 2022 — DECIDED AUGUST 29, 2022

_____

Before BRENNAN, SCUDDER, and ST EVE, *Circuit Judges*.

BRENNAN, *Circuit Judge*. In these appeals, which we consolidate for decision, three district judges denied motions for preliminary injunctions against state and local COVID-19 vaccine mandates. The plaintiffs argue the mandates violate their constitutional rights to substantive due process, procedural due process, and the free exercise of religion. They also contend the mandates violate Illinois state law. Although the plaintiffs could have presented some forceful legal arguments, they have failed to develop factual records to support their claims. Because the plaintiffs have not shown a likelihood of success on the merits, we affirm the decisions of the district judges.

## I. Factual Background

In response to the COVID-19 pandemic, state and local authorities in Illinois enacted a series of mandates and restrictions. The State of Illinois, Cook County Health and Hospitals System, the City of Chicago, and the City of Naperville each issued an order, policy, or directive requiring certain employees to vaccinate or regularly test for the virus. Employees who failed to comply with the mandates would be subject to disciplinary action, including possible termination. We begin by briefly summarizing each of the relevant state and local policies.

*The 2021 Illinois Mandate.* On September 3, 2021, Governor Pritzker used his emergency powers under the Illinois Emergency Management Agency Act, 20 ILL. COMP. STAT. 3305/1 *et seq.*, to issue Executive Order 2021–22 ("2021 Order"). The 2021 Order requires certain healthcare workers to vaccinate, or test at least weekly, for COVID-19. Workers who fail to comply with the mandate will not be permitted on the premises of a healthcare facility. Under the 2021 Order, a "Health Care Worker" is defined as "any person who (1) is employed by, volunteers for, or is contracted to provide services for a Health Care Facility, or is employed by an entity that is contracted to provide services to a Health Care Facility, and (2) is in close contact" with other persons in the facility for a specified amount of time. Initially, a "Health Care Facility" included "any institution, building, or agency … whether public or private (for-profit or nonprofit), that is used, operated or designed to provide health services, medical treatment or nursing, or rehabilitative or preventive care to any person or persons." According to the Order, "hospitals" and "emergency medical services" met this definition.

A worker is exempt from the vaccination requirement if "(1) vaccination is medically contraindicated," or "(2) vaccination would require the individual to violate or forgo a sincerely held religious belief, practice, or observance." But exempt workers still need to "undergo, at a minimum, weekly testing." The 2021 Order also provides that "[s]tate agencies … may promulgate emergency rules as necessary to effectuate" it.

The 2021 Order states it is intended to reduce COVID-19 exposure and transmission: "health care workers, and particularly those involved in direct patient care, face an increased risk of exposure to COVID-19." Requiring these workers to receive a "vaccine or undergo regular testing can help prevent outbreaks and reduce transmission to vulnerable individuals who may be at higher risk of severe disease." The Order states that "stopping the spread of COVID-19 in health care settings is critically important because of the presence of people with underlying conditions or compromised immune systems."

*The 2022 Illinois Mandate.* Ten months later, on July 12, 2022, Governor Pritzker issued Executive Order 2022–16 ("2022 Order"), which re-issued and modified the 2021 Order. The 2022 Order removes "emergency medical services" and "IDPH licensed emergency medical service vehicles" from the definition of a "Health Care Facility." It also requires that certain healthcare workers undergo weekly or biweekly testing only when the level of COVID-19 Community Transmission is moderate or high, depending on the type of facility.

*The Cook County Mandate.* Cook County Health and Hospitals System ("Cook County Health") is an agency of Cook County, Illinois. On August 16, 2021, it issued a vaccination policy ("County Health Vaccination Policy") that required all

personnel be fully vaccinated by September 30, 2021 as a condition of their employment.[1] The policy applies to all Cook County Health personnel, including contractors like the Hektoen Institute for Medical Research, LLC, a nonprofit organization that administers medical research grants. Failure to comply with the County Health Vaccination Policy "constitute[s] gross insubordination and will result in disciplinary action, up to and including termination."

The policy permits exemptions "based upon a disability, medical condition, or sincerely held religious belief, practice, or observance." Exemption requests are considered individually. When reviewing an exemption request, Cook County Health considers: (1) "the duration of the request (either permanent in the case of exemptions or temporary in the case of deferrals)," (2) "the nature and severity of the potential harm posed by the request," (3) "the likelihood of harm," and (4) "the imminence of the potential harm." Exempt personnel are still "required to comply with preventive infection control measures established by the Health System," which could include conditions "such as job location, job duties, and shift, but will minimally include weekly COVID-19 testing and enhanced [personal protective equipment] protocols." At first, Cook County Health decided to reject any religious accommodation request made by a person who had previously taken the flu vaccine. It remains unclear whether this approach was formally reversed, but there is no dispute that

---

[1] Several days later, the Cook County President issued an executive order, which mandated the COVID-19 vaccine for certain Cook County employees and encouraged County offices to develop their own vaccination policies.

Cook County Health later decided to grant religious exemptions.

*The City of Chicago Mandate*. On October 8, 2021, the City of Chicago issued a COVID-19 Vaccination Policy ("Chicago Vaccination Policy"), which required all City employees to be fully vaccinated by the end of the calendar year. Effective October 15, 2021, all employees, "as a condition of employment," had to "either be fully vaccinated against COVID-19" or undergo testing on a "twice weekly basis with tests separated by 3-4 days." Employees are "responsible for obtaining tests on their own time and at no cost to the City." The testing option expired at the end of the year, at which point employees would need to be fully vaccinated. The Chicago Vaccination Policy permits accommodations for a disability, medical condition, or sincerely held religious belief. To receive a religious accommodation, an employee must fill out a request form, including the reason for the exemption, the religious principle that conflicted with being vaccinated, and the signature of a religious leader.

*The City of Naperville Mandate*. On September 9, 2021, the City of Naperville issued "Naperville Fire Department Special Directive #21-01" ("Naperville Special Directive"). Under that directive, emergency medical technicians and firefighters employed by Naperville are required to either produce weekly negative COVID-19 tests or show proof of vaccination. This mandate is effectively coterminous with the State of Illinois's 2021 Order.

## II. Procedural Background

Three lawsuits were filed in the Northern District of Illinois, each challenging the Governor's 2021 Order and one of the local mandates.

In *Troogstad v. City of Chicago*, a group of City employees ("*Troogstad* plaintiffs") challenged the Chicago Vaccination Policy and the 2021 Order. They claimed the regulations violated their rights to bodily autonomy under the constitutional doctrines of substantive due process, procedural due process, and the free exercise of religion. They also claimed the policies violated the Illinois Health Care Right of Conscience Act. The *Troogstad* plaintiffs petitioned for a temporary restraining order against the enforcement of the policies, which Judge John Lee denied. They then moved for a preliminary injunction. The *Troogstad* plaintiffs declined to supplement the record with witnesses and limited discovery, instead filing a supplemental brief in support of their motion. Judge Lee denied that motion, and the *Troogstad* plaintiffs appeal that decision.

In *Lukaszczyk v. Cook County*, a group of Cook County Health and Hektoen employees ("*Lukaszczyk* plaintiffs") challenged the County Health Vaccination Policy and the 2021 Order. They brought claims implicating substantive due process, procedural due process, free exercise of religion, and the Illinois Health Care Right of Conscience Act. Based on these claims, the plaintiffs moved for a preliminary injunction to bar enforcement of the mandates. Judge Robert Gettleman denied that motion from the bench. The *Lukaszczyk* plaintiffs appeal that decision.

In *Halgren v. City of Naperville*, employees of the City of Naperville Fire Department ("*Halgren* plaintiffs") challenged

the Naperville Special Directive and the 2021 Order. The *Halgren* plaintiffs named as defendants Governor Pritzker, the City of Naperville, and Edward-Elmhurst Healthcare ("EEH")—a health system which operates a Naperville hospital and coordinates emergency medical services with the Fire Department. The Naperville Special Directive also stated that the Edward Hospital EMS System required the Fire Department to "provide a roster of who is vaccinated and a roster of who will be submitting to weekly testing." According to the *Halgren* plaintiffs, the regulations violated their rights to privacy and bodily autonomy under the constitutional doctrines of substantive due process, procedural due process, and equal protection. They moved for a temporary restraining order and preliminary injunction against the policies, as well as a declaratory judgment that the Governor had exceeded his statutory authority. The parties later agreed to convert the *Halgren* plaintiffs' combined motion for emergency relief into a motion only for a preliminary injunction. When given the opportunity, both parties chose to forgo discovery. Judge John Robert Blakey denied the *Halgren* plaintiffs' motion, which they now appeal.

### III. Mootness and Standing

Two threshold issues for our consideration are whether certain claims are moot because of the 2022 Order and if certain parties have standing.

The Constitution limits federal jurisdiction to cases and controversies. U.S. CONST. art. III, § 2. This limitation applies "at 'all stages of review, not merely at the time the complaint is filed.'" *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 860 (7th Cir. 2018) (quoting *Ciarpaglini v. Norwood*, 817 F.3d 541, 544 (7th Cir. 2016)). A plaintiff has standing if he has "(1) suffered

an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted). The case becomes moot, "[i]f at any point the plaintiff would not have standing to bring suit at that time." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of the Milwaukee*, 708 F.3d 921, 929 (7th Cir. 2013). As a general rule, cases or individual claims for relief are moot when the "issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *League of Women Voters of Ind., Inc. v. Sullivan*, 5 F.4th 714, 721 (7th Cir. 2021) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

### A. The 2022 Order

Governor Pritzker's 2022 Order, which amended the 2021 Order, removed (among other things) the phrase "emergency medical services" from the definition of a "Health Care Facility." This amendment meant the 2021 Order no longer applied to emergency medical services because employees at these facilities did not fall within the definition of a healthcare worker. So, employees of the Chicago and Naperville Fire Departments were not subject to the Governor's vaccination mandate. As a result, the claims of those plaintiffs against Governor Pritzker are moot because they seek to enjoin a policy that no longer applies to them. All other plaintiffs may still proceed with their claims against the Governor.

Practically, this means all the *Halgren* plaintiffs' claims against Governor Pritzker are moot,[2] and all the claims made by Chicago Fire Department employees in *Troogstad* against Governor Pritzker are moot. Each of these plaintiffs were considered healthcare workers because they were part of "emergency medical services," so they now seek to enjoin an inapplicable policy.

### B. The Hektoen Employees

Governor Pritzker argues that the *Lukaszczyk* plaintiffs lack standing to challenge the 2021 Order because their alleged injury is not fairly traceable to the mandate. According to the Governor, the plaintiffs failed to present evidence that they objected to the weekly testing option, which was permitted in lieu of vaccination. Each of the *Lukaszczyk* plaintiffs— the Cook County and Hektoen employees—testified in their depositions that they were willing to comply with a testing option. So, the Governor submits, the plaintiffs' "alleged injuries of unwanted vaccination and/or employment discipline are the product of the County's mandate and are not fairly traceable to the Governor's conduct."

We disagree and conclude that the *Lukaszczyk* plaintiffs have standing to challenge the 2021 Order. There is standing if a plaintiff has a fairly traceable injury that the court could redress with a favorable decision. *Fox*, 980 F.3d at 1151. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized," and "(b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at

---

[2] The *Halgren* plaintiffs were the only parties to raise an equal protection claim, and that claim was made solely against the Governor, so we have no occasion to reach that constitutional argument.

560 (cleaned up). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Id.* at 560 n.1. It is concrete if it is "real," not abstract. *Spokeo, Inc.*, 578 U.S. at 340 (citation omitted). The *Lukaszczyk* plaintiffs' successfully alleged an injury in fact by claiming they were burdened by scheduling and paying for weekly COVID-19 tests. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" (citations omitted)). The burden of scheduling and paying for weekly tests suffices for an Article III injury.

The injuries here are also fairly traceable to the defendants because they are a direct result of the County Health Vaccination Policy. Both the district court and our court could redress the plaintiffs' injuries by enjoining the vaccination mandate, eliminating the extra costs imposed on the defendants. *See id.* The *Lukaszczyk* plaintiffs therefore have standing to challenge the County Health Vaccination Policy.

### C. Edward-Elmhurst Healthcare

EEH argues it is not responsible for the vaccine and testing mandates so it should not be a party. Standing requires "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560–61 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). Because EEH did not issue or require compliance with either the 2021 or 2022 Orders or the Naperville Special Directive, EEH argues it did not cause the harm the *Halgren* plaintiffs allege.

On this record, the *Halgren* plaintiffs do not have standing against EEH. Like those plaintiffs, EEH was subject to the Naperville Special Directive. But there is no evidence that EEH

helped promulgate it. By its own terms, the Naperville Special Directive mentions EEH only once, stating that certain employers must provide EEH with "lists of vaccinated and tested employees." Affidavits from an EEH official confirm this account. The plaintiffs do not respond to this argument, except to state that EEH's agent is empowered to supervise, and potentially to suspend, EMS personnel. But the only evidence the plaintiffs provided are their own affidavits, claiming that Naperville told them that EEH required compliance with the Special Directive. That EEH complied with Naperville's Special Directive is not, by itself, enough to prove a causal connection. *See Doe v. Holcomb*, 883 F.3d 971, 975–76 (7th Cir. 2018) (noting that when a plaintiff sues a state official to enjoin the enforcement of a state statute, he must "establish that his injury is causally connected to that enforcement and that enjoining the enforcement is likely to redress his injury"). So, the *Halgren* plaintiffs do not have standing against EEH, and we need not resolve EEH's alternative argument that it is not a state actor. The *Halgren* plaintiffs may proceed on their claims against Naperville, but not against EEH.

## IV. Preliminary Injunction

Having resolved those justiciability questions, we now review the denial in each case of a motion for a preliminary injunction. Such a denial is examined for abuse of discretion. *DM Trans, LLC v. Scott*, 38 F.4th 608, 617 (7th Cir. 2022). A district court abuses its discretion "when it commits a clear error of fact or an error of law." *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021) (quoting *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992)). We consider the district court's legal conclusions de novo and its findings of fact for clear

error. *Common Cause Ind. v. Lawson*, 978 F.3d 1036, 1039 (7th Cir. 2020) (citations omitted).

A preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell*, 990 F.3d at 544 (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (citation omitted). The first step requires that the plaintiff "demonstrate that [his] claim has some likelihood of success on the merits, not merely a better than negligible chance." *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020) (internal citation and quotation marks omitted). It "is often decisive." *Braam v. Carr*, 37 F.4th 1269, 1272 (7th Cir. 2022). If plaintiffs fail to establish their likelihood of success on the merits, we need not address the remaining preliminary injunction elements. *Doe v. Univ. of S. Ind.*, No. 22-1864, 2022 WL 3152596, at *3 (7th Cir. Aug. 8, 2022).

We address the remaining claims in the order presented on appeal, which is the same order in which the district judges addressed them. Those claims are:

| | *Halgren v. City of Naperville,* No. 21-3231<br><br>**Judge Blakey** | *Lukaszczyk v. Cook County,* No. 21-3200<br><br>**Judge Gettle-man** | *Troogstad v. City of Chicago,* No. 21-3371<br><br>**Judge Lee** |
|---|:---:|:---:|:---:|
| **Substantive Due Process** | X | X | X |
| **Procedural Due Process** | X | X | X |
| **Free Exercise** | | X | X |
| **Illinois Health Care Right of Conscience Act** | | X | X |

**A. Substantive Due Process**

The plaintiffs in each case claim state and local COVID-19 regulations violated their constitutional right to substantive due process by interfering with their rights to bodily autonomy and privacy.

The Fourteenth Amendment provides in part that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Due Process Clause has a substantive and procedural component. But "[t]he scope of substantive due process is very limited." *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019) (quoting *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005)).

"Substantive due process protects against only the most egregious and outrageous government action." *Id.* (citations omitted). When stating a claim, a "plaintiff must allege that the government violated a fundamental right or liberty." *Id.* (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Such a violation must have been arbitrary and irrational. *Id.* (citations omitted). Courts should also be "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citation omitted).

Under this framework, we consider whether the plaintiffs assert a fundamental right or liberty. If so, we must apply heightened scrutiny. If not, we review the claim for a rational basis. Several cases speak to this decision. In *Jacobson v. Commonwealth of Massachusetts*, the Supreme Court considered the validity of a Massachusetts statute that required all persons older than 21 receive the smallpox vaccine. 197 U.S. 11, 12 (1905). Failure to comply with the law would result in a $5 fine (about $140 today). *Id.*; *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring). The law's only exception was for children deemed unfit for vaccination who presented a certificate signed by a registered physician. *Jacobson*, 197 U.S. at 12. In response to the state law, the city of Cambridge board of health adopted a regulation requiring that all city inhabitants be vaccinated or revaccinated. *Id.* at 12–13. Henning Jacobson did not comply with the mandate and was sentenced to jail until he agreed to pay the fine. *Id.* at 13. He appealed, claiming the Massachusetts law authorizing the local mandate violated his constitutional rights under the Fourteenth Amendment. *Id.* at 14.

The Supreme Court held in *Jacobson* that a state may require, without exception, that the public be vaccinated for smallpox. *Id.* at 39. The Court reasoned that "[a]ccording to settled principles, the police power of a state must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety." *Id.* at 25 (citations omitted). The Massachusetts legislature "required the inhabitants of a city or town to be vaccinated only when, in the opinion of the board of health, that was necessary for the public health or the public safety." *Id.* at 27. Investing "such a body with authority over such matters was not an unusual, nor an unreasonable or arbitrary, requirement," the Court concluded. *Id.* But "if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety" lacks any "real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." *Id.* at 31 (citations omitted).

*Jacobson*, although informative precedent, is factually distinguishable. The Massachusetts law and Cambridge mandate were challenged in the wake of the smallpox pandemic, which was of a different nature than the COVID-19 pandemic of the last few years. For example, as Judge Blakey found in *Halgren*, the smallpox fatality rate among the unvaccinated was about 26 percent; by contrast, the COVID-19 infection fatality rate was estimated in January 2021 to be somewhere between 0.0–1.63 percent. Frank Fenner et al., *Smallpox and its Eradication*, WORLD HEALTH ORGANIZATION (1988); John P.A. Ioannidis, *Infection fatality rate of COVID-19 inferred from seroprevalence data*, WORLD HEALTH ORGANIZATION BULLETIN (Oct.

14, 2020) (stating that COVID-19 "[i]nfection fatality rates ranged from 0.00% to 1.63%" with "corrected values from 0.00% to 1.54%" and in "people younger than 70 years, infection fatality rates ranged from 0.00% to 0.31% with crude and corrected medians of 0.05%").

In *Halgren* the district court also found that COVID-19 has "a low attack rate"[3] in contrast to the smallpox pandemic. Grace E. Patterson et al., *Societal Impacts of Pandemics: Comparing COVID-19 With History to Focus Our Response*, FRONTIERS IN PUBLIC HEALTH (Apr. 21, 2021). Judge Blakey further concluded that the vaccines for smallpox and COVID-19 are distinguishable—the smallpox vaccine was a sterilizing vaccine, intended to kill the virus and prevent transmission, but many of the COVID-19 vaccines are, by design, non-sterilizing. James Myhre and Dennis Sifris, MD, *Sterilizing Immunity and COVID-19 Vaccines*, VERYWELL HEALTH (Dec. 24, 2020).

*Jacobson* is also legally and historically distinguishable. The decision predates *United States v. Carolene Products Co.*, 304 U.S. 144 (1938), in which the Court reserved the possibility of stricter standards of review for certain constitutional cases implicating "prejudice against discrete and insular minorities." *Id*. at 152–53 & n.4. The principles underlying *Jacobson* are also important to consider. As Judge Blakey noted in a thorough opinion, in *Jacobson* the Court voiced concerns for federalism, the limits of liberty, and the separation of powers. *Jacobson* instructed that in emergency circumstances courts defer to the executive and legislative branches, but they do

---

[3] An "attack rate" is typically "calculated as the number of people who became ill divided by the number of people at risk for the illness." *Attack Rate*, ENCYCLOPEDIA BRITANNICA (2016).

not abdicate their constitutional role. If a policy had "no real or substantial relation" to its ends, the Court in *Jacobson* reasoned, courts had a duty to intervene. *Jacobson*, 197 U.S. at 31.

Recent circuit precedent supplements *Jacobson*. In *Klaassen v. Trustees of Indiana University*, eight students brought a lawsuit against Indiana University challenging the school's COVID-19 vaccine policy. 7 F.4th 592, 592 (7th Cir. 2021). That policy required all students be vaccinated against COVID-19 unless they were exempt for religious or medical reasons. *Id.* The students sought a preliminary injunction, claiming the policy violated their due process rights under the Fourteenth Amendment. *Id.* Citing *Jacobson*, this court applied the rational basis standard. *Id.* at 593. We noted that the university's vaccine policy made for an easier case than *Jacobson* because the university's policy had religious and medical exceptions, and it required only university attendees to vaccinate, rather than all the citizens of a state. *Id.* This court then denied the request for an injunction pending appeal. *Id.* at 594.

The plaintiffs here cite several other decisions to argue they have a fundamental liberty and bodily autonomy interest, which require our court to review the mandates under strict scrutiny review. *See Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278 (1990) (stating that a "competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment"); *Washington v. Harper*, 494 U.S. 210, 221–22, 229 (1990) (recognizing that prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment" and stating that the "forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's

liberty" (citations omitted)); *Glucksberg*, 521 U.S. at 735 (holding that a state ban on assisted suicide did "not violate the Fourteenth Amendment, either on its face or as applied to competent, terminally ill adults who wish to hasten their deaths by obtaining medication prescribed by their doctors" (citation and internal quotation marks omitted)). The plaintiffs also rely on *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), both since overruled by *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2242 (2022).

"Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) (citing *Glucksberg,* 521 U.S. at 728). Following the guidance of the Supreme Court, our court has been hesitant to expand the scope of fundamental rights under substantive due process. *See, e.g.*, *Campos*, 932 F.3d at 975 (noting that employment-related rights are not fundamental); *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010) (stating that "an alleged wrongful termination of public employment is not actionable as a violation of substantive due process unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate" (citation omitted)). Using similar reasoning, our court applied rational basis review to the vaccine mandate claim in *Klaassen*. 7 F.4th at 593. *E.g. Cuomo*, 141 S. Ct. at 70 (Gorsuch, J., concurring) ("Although *Jacobson* pre-dated the modern tiers of scrutiny, this Court essentially applied rational basis review to Henning Jacobson's challenge."). We follow that path here.

Plaintiffs in each case have failed to provide facts sufficient to show that the challenged mandates abridge a fundamental right. Nor do they provide a textual or historical argument for their constitutional interpretation. Plaintiffs do not cite any controlling case law or other legal authority in support of their position, instead relying on decisions that are either factually distinguishable or that have been overruled. Neither this court nor the district judges deny that requiring the administration of an unwanted vaccine involves important privacy interests. But the record developed and presented here does not demonstrate that these interests qualify as a fundamental right under substantive due process.

The district judge in each of these cases followed Supreme Court and circuit court precedent by applying the rational basis standard. Following that same authority, we decline to apply strict scrutiny and instead review for rational basis. "Under rational-basis review, a statutory classification comes to court bearing a strong presumption of validity, and the challenger must negative every conceivable basis which might support it." *Minerva Dairy, Inc. v. Harsdorf*, 905 F.3d 1047, 1053 (7th Cir. 2018) (quoting *Ind. Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318, 322 (7th Cir. 2015)). So, "to uphold the statute, 'we need only find a reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* (quoting *Ind. Petroleum Marketers*, 808 F.3d at 322). Rational basis review is "a heavy legal lift for the challengers." *Ind. Petroleum Marketers*, 808 F.3d at 322. As Judge Blakey stated in *Halgren*, the plaintiffs' substantive due process claim "is two-fold: (1) the mandate is based on a misconception that vaccinated individuals are less likely to spread the SARS-CoV-2 virus than the unvaccinated and naturally immune; and (2) natural immunity provides incredibly

strong protection against infection from COVID-19, and it does so on par with any vaccine protection."

In *Halgren*, the parties agreed that the vaccines can mitigate some dangerous COVID-19 symptoms. They also agreed that both unvaccinated and vaccinated people can spread the virus, and they did not dispute the existence of serious vaccine-induced side-effects. The parties did dispute the relative protection provided by natural immunity and COVID-19 vaccines. The defendants provided evidence from the Centers for Disease Control, declarations from public health officials, and numerous studies, all reporting that the vaccine is effective against COVID-19. The evidence that vaccines reduce the rate of transmission provides a reasonably conceivable set of facts to support the mandates.

The same is true for the protections afforded by natural immunity. The challenged mandates are susceptible to scientific critique, but the plaintiffs did not provide any evidence—studies, expert reports, or otherwise—showing that the benefits of vaccination on top of natural immunity eliminate a "conceivable basis" for the mandates under rational basis review. The plaintiffs do not dispute that these governments have an interest in preventing the spread of COVID-19, and they relied on reasonably conceivable scientific evidence when promulgating the contested policies. Even if the vaccination policies do not fully account for natural immunity or studies with contrary results, under rational basis review a government need only show that its rationale is supported by a "reasonably conceivable state of facts." *Minerva Dairy*, 905 F.3d at 1053. The governments here have met that low bar. As Judge Blakey noted, the plaintiffs do not account for the fact that vaccination combined with natural immunity could

reasonably be judged as more effective than natural immunity alone.

On this record, the *Lukaszczyk*, *Troogstad*, and *Halgren* plaintiffs have not met their burden under the rational basis standard to show that the challenged policies violate their substantive due process rights. They have shown the efficacy of natural immunity as well as pointed out some uncertainties associated with the COVID-19 vaccines. But they have not shown the governments lack a "reasonably conceivable state of facts" to support their policies. *Id.* Thus, the district judges correctly concluded that the substantive due process claims were not likely to succeed on the merits.

### B. Procedural Due Process

Plaintiffs in each case claim the state and local COVID-19 regulations violated their procedural due process rights. *See* U.S. CONST. amend. XIV, § 1. Before reviewing this claim, we consider the doctrine of sovereign immunity.

#### 1. The Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. A "claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). "A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Id.* at 106. Rather,

"it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* This type of "result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.*

Even "when properly raised, sovereign immunity is not absolute immunity." *Council 31 of the Am. Fed'n of State, Cnty., and Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012). A state may be subjected to an action in federal court in three instances: "(1) where Congress, acting under its constitutional authority conveyed by amendments passed after the Eleventh Amendment … abrogates a state's immunity from suit; (2) where the state itself consents to being sued in federal court; and (3) under the [*Ex parte Young*] doctrine." *Id.* (citation omitted). Under the *Ex parte Young* doctrine, private parties may "sue individual state officials for prospective relief to enjoin ongoing violations of federal law." *Id.* (quoting *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 337 (7th Cir. 2000)). The longstanding rationale for this doctrine is that "[b]ecause an unconstitutional legislative enactment is 'void,' a state official who enforces that law 'comes into conflict with the superior authority of the Constitution,' and therefore is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.'" *Id.* (quoting *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011)). A court therefore "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (quoting *Ind. Prot. & Advocacy Servs. v. Ind. Fam. and Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010)).

For reasons previously discussed, the procedural due process claims against Governor Pritzker of all *Halgren* plaintiffs and those *Troogstad* plaintiffs who were Chicago Fire Department employees are moot. The remaining claims, made by the *Lukaszczyk* plaintiffs and the rest of the *Troogstad* plaintiffs are against Governor Pritzker in his official capacity and seek prospective relief. To the extent these plaintiffs allege violations of Illinois law—such as whether Governor Pritzker exceeded his authority under the Emergency Management Agency Act—sovereign immunity bars their claims in this court. Individual state officials may be sued personally for federal constitutional violations committed in their official capacities, but that principle does not extend to "claim[s] that state officials violated state law in carrying out their official responsibilities." *Pennhurst*, 465 U.S. at 121.

### 2. The Fourteenth Amendment

Review of the claim that Governor Pritzker's 2021 Order violated the Fourteenth Amendment by depriving the *Lukaszczyk* and *Troogstad* plaintiffs of their protected property interests is not barred by the Eleventh Amendment. A plaintiff who asserts "a procedural due process claim must have a protected property interest in that which he claims to have been denied without due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (citation omitted). To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Id.* (quoting *Hudson v. City of Chicago,* 374 F.3d 554, 559 (7th Cir. 2004)).

In *Board of Regents of State Colleges v. Roth*, the Supreme Court explained that "[t]o have a property interest in a

benefit, a person clearly must have more than an abstract need or desire for it," and "more than a unilateral expectation of it." 408 U.S. 564, 577 (1972). Instead, the person must "have a legitimate claim of entitlement to it." *Id.* For "[i]t is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." *Id.* The right to a hearing provides an opportunity to vindicate those claims. *Id.*

The *Lukaszczyk* and *Troogstad* plaintiffs argue that the right to earn a living is protected under the Fourteenth Amendment. They contend that even if an employee does not have a property interest in public employment, a termination or decision not to renew a contract "cannot be premised upon the employee's protected activities." But beyond these general statements, the plaintiffs have not provided any evidence or a legal argument as to why they have a property interest in public employment. Conclusory statements are not enough to establish "a legitimate claim of entitlement," so the plaintiffs' claim against Governor Pritzker fails.

The *Lukaszczyk* and *Troogstad* plaintiffs also assert procedural due process claims against local authorities. They argue that local executives exceeded their authority by promulgating vaccination policies without legislative directives. The *Troogstad* plaintiffs claim the City of Chicago violated their procedural due process rights when Mayor Lori Lightfoot promulgated the City Vaccination Policy. According to the *Troogstad* plaintiffs, the City Vaccination Policy is legislative in nature and requires approval from the Chicago City Council. As to the County Health Vaccination Policy, the *Lukaszczyk* plaintiffs point out that Cook County Health "answer[s] to the [Cook] County Board." Other than this uncontested assertion,

though, they fail to explain what procedural violation occurred.

The procedural due process claims here fail because the *Lukaszczyk* and *Troogstad* plaintiffs have not articulated what procedural protections they should have been afforded. As this court has stated before, "[s]tate and local governments need not follow the pattern of separated powers in the national Constitution." *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992) (citations omitted). For example, "[e]xecutive officials sometimes exercise legislative powers (think of the city manager model, related to parliamentary government)." *Id.* A "[p]urely executive official[] may have the power to set policy by delegation (express or implied by custom) when the legislature is silent." *Id.* (citations omitted). In fact, "[e]ven executive action in the teeth of municipal law could be called policy." *Id.* Without specifying the process that was due, how it was withheld, and evidence for the alleged protected interest, the plaintiffs' procedural due process claims fail. *See Roth*, 408 U.S. at 577; *Khan*, 630 F.3d at 527.

*     *     *

The district judges correctly ruled that the procedural due process claims of the plaintiffs were unlikely to succeed on the merits due to the bar of sovereign immunity or because they have failed to show how the local policies denied them procedural due process.

### C. Free Exercise of Religion

The *Lukaszczyk* and *Troogstad* plaintiffs also claim that the state and local COVID-19 regulations unconstitutionally burdened their right to the free exercise of religion under the First Amendment. Many of these plaintiffs object on religious

grounds to the use of alleged aborted fetal cells in the development of the vaccine.

The First Amendment provides that "Congress shall make no law … prohibiting the free exercise" of religion. U.S. CONST. amend I. To merit protection under the Constitution, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others." *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). According to the plaintiffs, the COVID-19 regulations violated the exercise of their sincerely held religious beliefs by forcing them to either vaccinate in violation of their faith or lose their jobs. We consider these claims, with the exception of the Chicago Fire Department employees' claims against Governor Pritzker in *Troogstad*, which are moot for the reasons discussed above.

The *Lukaszczyk* and *Troogstad* plaintiffs cite certain decisions to guide our evaluation of these claims. In *Fulton v. City of Philadelphia*, the Supreme Court reiterated that "laws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." 141 S. Ct. 1868, 1876 (2021) (citing *Emp. Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878–82 (1990)). The government "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id.* (citations omitted). Further, a law is not generally applicable if it provides "'a mechanism for individualized exemptions'" or "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* at 1877 (citations omitted) (quoting *Smith*, 494 U.S. at 884). So, "where the State has in place a system of individual exemptions, it may not refuse to extend that

system to cases of religious hardship without compelling reason." *Id.* (quoting *Smith*, 494 U.S. at 884).

The Sixth Circuit reviewed a similar claim in *Dahl v. Board of Trustees of Western Michigan University*, 15 F.4th 728 (6th Cir. 2021). There, a public university promulgated a policy requiring "student-athletes to be vaccinated against COVID-19." *Id.* at 730. The policy permitted the school to consider "individual requests for medical and religious exemptions on a discretionary basis." *Id.* But, when 16 student-athletes requested religious exemptions, the university ignored or denied their requests and barred them from participating in team activities. *Id.* The student-athletes sued the university, and a district court preliminarily enjoined the officials from enforcing the mandate. *Id.* The Sixth Circuit denied the motion for a stay of the preliminary injunction because the Free Exercise challenge would likely succeed on appeal. *Id.* at 736. The court stated that "having announced a system under which student-athletes can seek individualized exemptions, the University must explain why it chose not to grant any to plaintiffs." *Id.* Because "the University's policy is not neutral and generally applicable," the court "analyze[d] the policy through the lens of what has come to be known as 'strict scrutiny.'" *Id.* at 734 (citing *Fulton*, 141 S. Ct. at 1881).

In *Troogstad*, Judge Lee concluded that there was no need to apply the test reiterated in *Fulton* because the plaintiffs had "not stated a claim under the Free Exercise Clause on the current record." On the facts before him, no plaintiff that "applied for and [was] denied an exemption from the City Vaccination Policy … made a good faith attempt to comply with the Policy's exemption process." That process requires applicants to "fill out a form providing a reason for the request and

an explanation of the principle of the applicant's religion that conflicts with vaccination."

Before us, the *Troogstad* plaintiffs concede that Judge Lee "correctly pointed out that there was no as-applied challenge" in the case. The plaintiffs note, though, that when the petition was filed, the City of Chicago had "not yet ruled on requests for religious accommodations." Rather than wait for the accommodation decisions, the *Troogstad* plaintiffs brought a facial challenge, arguing the accommodation forms "demonstrate that the City reserved great discretion for itself to rule on whether the religious beliefs were legitimate, consistent, and approved by religious leaders." But this facial challenge is insufficient. On paper, the City of Chicago provides religious exemptions for its vaccination policy. Judge Lee gave the *Troogstad* plaintiffs an opportunity to develop the factual record on this point, but they declined to do so. It is unlikely that they will succeed on the merits without evidence of how the religious exemption is applied in practice.

The *Lukaszczyk* plaintiffs argue that Cook County Health's initial decision to reject any religious accommodation request made by someone who had previously received the flu vaccine violated the Free Exercise Clause. They claim this policy was never rescinded, although they admit that the government did an "about-face," later deciding to grant religious exemptions. According to the *Lukaszczyk* plaintiffs, this accommodation permitted individuals to seek "non-existent telecommuting positions" and favored individuals who received one Pfizer or Moderna shot over those who had natural immunity. Once again, if these assertions have merit, there is no record evidence to support them. The plaintiffs should have gathered facts and created a record detailing any

wrongful denials of requests for religious exemptions. Instead, they made a facial challenge, which ignored the text of the policy's religious exemption and the status of the plaintiffs' exemption requests. This does not show a violation of their right to freely exercise their religions.

For these reasons, the district judges correctly concluded that the free exercise claims of the *Lukaszczyk* and *Troogstad* plaintiffs were unlikely to succeed on the merits.

**D. The Illinois Health Care Right of Conscience Act**

Finally, the *Lukaszczyk* and *Troogstad* plaintiffs claim that the state and local COVID-19 regulations violate their rights under the Illinois Health Care Right of Conscience Act, 745 ILL. COMP. STAT. § 70/1 *et seq.* ("HCRCA"). Between these two cases, the plaintiffs make claims against Governor Pritzker, Cook County, the City of Chicago, and Hektoen. As discussed above, the HCRCA claims against Governor Pritzker are either mooted by the 2022 Order or barred by the Eleventh Amendment. *See Pennhurst*, 45 U.S. at 106.

The HCRCA states in part:

> It shall be unlawful for any person, public or private institution, or public official to discriminate against any person in any manner … because of such person's conscientious refusal to receive, obtain, accept, perform, assist, counsel, suggest, recommend, refer or participate in any way in any particular form of health care services contrary to his or her conscience.

745 ILL. COMP. STAT. § 70/5. The statute defines "[c]onscience" as "a sincerely held set of moral convictions arising from belief in and relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths." *Id.* § 70/3. The plaintiffs claim that the local vaccine mandates on their face violate this provision. But both of the challenged mandates provide individualized religious exemptions. For example, as Judge Lee explained in *Troogstad*, the City of Chicago's religious exemption form separates out individuals with "a sincerely held set of moral convictions arising from belief in and relation to religious beliefs." So, both the HCRCA and the City's Vaccination Policy endeavor to protect those who object to the vaccine for moral reasons.

The same is true in *Lukaszczyk*. Those plaintiffs argue that the County Health Vaccination Policy violates the HCRCA because it "threaten[s] suspension and subsequent termination" of noncompliant employees. But on its face, the policy permits exemptions "based upon a disability, medical condition, or sincerely held religious belief, practice, or observance." The text of this exemption fits within the HCRCA's conscience protections. The County Health Vaccination Policy also states it does not permit "exemption[s] or deferral[s] based solely upon a general philosophical or moral reluctance." Although more troubling on its face, this language does not disqualify the County Health Vaccination Policy under the HCRCA because that Policy still permits exemptions based upon a sincerely held religious belief.

The *Lukaszczyk* plaintiffs also have not made an as-applied claim or provided any evidence that the County Health Vaccination Policy's religious exemption does not cover people

who are protected under the HCRCA. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008) ("[W]e must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." (citing *United States v. Raines*, 362 U.S. 17, 22 (1960)). In short, the *Lukaszczyk* plaintiffs do not present any textual argument or evidence that the County Health Vaccination Policy violates Illinois state law.

We cannot conclude that the local vaccine mandates violate the HCRCA as a facial matter. To pursue this claim, the plaintiffs should have produced evidence of their allegations. Without this evidence, it is unlikely that their claims against the local governments and Hektoen will succeed on their merits.

### V. Conclusion

Based on the records before us, the district judges did not abuse their discretion when they denied the plaintiffs' motions for a preliminary injunction. Even if the plaintiffs had established the other elements required for a preliminary injunction, they have not shown that their claims are likely to succeed on the merits. We therefore AFFIRM the decisions of the district court.